[Cite as *State v Jones*, 2013-Ohio-2986.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| COUNTY OF SUMMIT | )ss: | NINTH JUDICIAL DISTRICT |
| | ) | |

STATE OF OHIO

    Appellant

    v.

DEWEY JONES, III

    Appellee

C.A. No.    26568

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 1994 06 1409 C

DECISION AND JOURNAL ENTRY

Dated: July 10, 2013

---

MOORE, Presiding Judge.

{¶1} The State of Ohio appeals the order of the Summit County Court of Common Pleas that granted Dewey Amos Jones' motion for a new trial. This Court affirms.

I.

{¶2} On February 13, 1993, someone entered the home of seventy-one-year-old Neal Rankin and, during the course of a robbery, shot him twice in the head at close range. Police found no signs of forced entry, so the investigation focused on Mr. Rankin's circle of younger acquaintances who often received money from him. Mr. Jones and his wife were known to frequent Mr. Rankin's home, and suspicion soon turned in their direction. Along with a third person, Gary Rusu, the Joneses were indicted on charges of aggravated murder. Soon, the charges against Mrs. Jones and Mr. Rusu were dismissed, leaving Mr. Jones as the only defendant.

{¶3}    At trial, one of Mr. Rankin's neighbors testified that he had seen someone leaving Mr. Rankin's house on the evening of the murder and that he had identified Mr. Jones from a photographic array some months after the crime.  The same witness, however, also identified two other people from photo arrays at different times.  A jailhouse informant testified that Mr. Jones confessed the crime to him, but no physical evidence linked Mr. Jones to the murder.  In 1995, a jury found him guilty of aggravated murder, and the trial court sentenced him to life in prison.  Mr. Jones appealed, and this Court affirmed his conviction.  *State v. Jones*, 9th Dist. Summit No. 17213, 1996 WL 37725 (Jan. 31, 2006).

{¶4}    In 2008, Mr. Jones moved the trial court for DNA testing under R.C. 2953.73.  On April 29, 2010, the trial court granted the motion, concluding that although DNA testing was not possible when he was tried given the quality of the samples, advances in technology by 2010 permitted DNA profiles to be obtained from "very small, degraded, or compromised samples."  The trial court observed that "depending on whether the results of the DNA evidence yield the existence of a different perpetrator at the scene, in particular one of the individuals initially picked out of photo arrays by witnesses, there is a strong probability that a reasonable factfinder could find that [Mr. Jones] was not the killer of Neal Rankin."  Once the DNA test results were obtained excluding him as a contributor, Mr. Jones moved for a new trial.  The trial court granted his motion on July 9, 2012, noting that the test results "call[ed] into question the State's entire theory of the case" and "undermine[d] the testimony of the State's witness, Willie Caton" because "[t]he DNA does not support, and in some instances, works directly against, the testimony of Mr. Caton."

{¶5}    The State moved for leave to appeal the decision.  This Court allowed the appeal, and the State has presented one assignment of error.

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY GRANTING DEWEY JONES, III A NEW
TRIAL PURSUANT TO CRIM.R. 33(A)(6).

{¶6} The State's assignment of error argues that the trial court erred by granting Mr.
Jones' motion for a new trial because, according to the State, there is not a strong probability that
the new evidence would change the result of the trial. We disagree.

{¶7} Under Crim.R. 33(A)(6), a trial court may grant a motion for a new trial "[w]hen
new evidence material to the defense is discovered which the defendant could not with
reasonable diligence have discovered and produced at the trial." A new trial is justified when the
newly discovered evidence "(1) discloses a strong probability that it will change the result if a
new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the
exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is
not merely cumulative to former evidence, and (6) does not merely impeach or contradict the
former evidence." *State v. Brown*, 9th Dist. Summit No. 26309, 2012-Ohio-5049, ¶ 3, quoting
*State v. Petro*, 148 Ohio St. 505 (1947) syllabus. With respect to the last requirement, this Court
has observed that the emphasis must be on the substantial probability of a different result and
that, within that framework, newly discovered evidence that impeaches or contradicts the
evidence at trial can be considered under Crim.R. 33(A)(6). *Brown* at ¶ 4.

{¶8} We review an order granting a motion for a new trial on the basis of newly
discovered evidence for an abuse of the trial court's discretion. *State v. Williams*, 43 Ohio St.2d
88 (1975), paragraph two of the syllabus. Although Mr. Jones moved for a new trial based on
several items of newly discovered evidence, the trial court's analysis focused on the substantial

probability that newly obtained DNA testing would lead to a different result at trial. We will, therefore, limit our consideration to the newly obtained DNA evidence as well.

{¶9} Our analysis begins with the evidence that was presented at trial. There was no physical evidence that linked Mr. Jones to the crime, and the evidence presented by the State consisted of witness identifications from photographic arrays and the testimony of a jail informant.

{¶10} According to the Summit County Coroner, Mr. Rankin died as a result of two gunshot wounds to the back of his head that were inflicted at very close range, either of which would have been fatal. The Coroner estimated that Mr. Rankin died between 4:00 p.m. and 8:00 p.m. on February 13, 1993. Police found Mr. Rankin's home in disarray and concluded that although there was no evidence of forced entry, Mr. Rankin had been killed during the course of a robbery.

{¶11} At the time of his death, Mr. Rankin was seventy-one years old. His daughter, Ellen Mary Davis, testified that despite his age, Mr. Rankin befriended many people who were significantly younger and often gave them large amounts of money. Ms. Davis knew Mr. Jones to be among her father's younger acquaintances, and she testified at trial that her father had told her once that he was afraid of Mr. Jones. Ms. Davis testified that she was out of town when her father died, and that while she made her preparations to leave, her father asked if she would give him her gun and his checkbook. Ms. Davis did not take his comment seriously.

{¶12} Charles Hughey, who lived in Mr. Rankin's neighborhood, testified that he and his fiance's son saw a man walking back and forth and getting into and out of a car during the afternoon of February 13th. Mr. Hughey, who had never seen the man before, was concerned by his behavior. Mr. Hughey testified that he confronted the man face-to-face out of concern for an

elderly neighbor. Mr. Hughey identified Mr. Jones from a photo array as the man he saw, but only after selecting another man, Larry Hayes, first. Although his fiance's son did not testify, Mr. Hughey stated that the youth also selected Larry Hayes from the photo array. Neither placed the individual that they saw at Mr. Rankin's home.

{¶13} Robert and Carrie Strittmatter lived across the street from Mr. Rankin's Independence Avenue home. On the night of the murder around 6:00 p.m., the Strittmatters were preparing to celebrate their anniversary at a local restaurant. Mrs. Strittmatter testified that around 6:20 p.m., she heard a car "flying out of [Mr. Rankin's] driveway." Mr. Strittmatter testified that he saw someone coming out of Mr. Rankin's house. Although Mr. Strittmatter testified that he recognized Mr. Jones as a frequent visitor at Mr. Rankin's house, he could not identify Mr. Jones to the police as the person that he saw. Consequently, Police asked Mr. Strittmatter to identify the person he saw from photo arrays on three or four separate occasions. On the first occasion, just after the murder, he "picked out one gentleman that looked like the gentleman that [he had seen] come out of the house." That person was not Mr. Jones. Nine months later, in December 1993, Mr. Strittmatter selected a man named Billy Wilson from another photo array. Mr. Strittmatter recalled, "I think I said if he was clean-cut and shaved and everything, that it could have been him." In February 1994, Mr. Strittmatter made the same statement about Billy Wilson again. Finally, in May 1994, Mr. Strittmatter identified Mr. Jones from a photograph. Mr. Strittmatter testified that "[a]ccording to the pictures I was shown and what the police officers told me, yes, I am sure it was him."

{¶14} The only testimony at trial that directly implicated Mr. Jones in the murder came from William Grant Caton, who was incarcerated with Mr. Jones in the Summit County Jail. According to Mr. Caton, he talked to Mr. Jones about the murder twice. He testified that on the

first occasion, Mr. Jones told him that a gun found in a car belonging to a man named Billy Simpson was not the murder weapon, and that the actual murder weapon would never be found.[1] According to Mr. Caton, Mr. Jones later told him that he shot Mr. Rankin during a robbery when "things got out of hand." On cross-examination, Mr. Caton acknowledged that he hoped to obtain a community control sentence, help finding employment, and the ability to see his children as a result of his cooperation in the prosecution of Mr. Jones.

{¶15} In 2011, DNA testing results were obtained from seven pieces of physical evidence related to the murder of Neal Rankin: (1) a rope that was tied to one of his wrists, (2) a cigarette butt found at the murder scene, (3) the wrist area of the long-sleeved shirt that Mr. Rankin was wearing when he was killed, (4) a clasp knife found at the murder scene, (5) the barrel of the gun recovered from Billy Simpson's car, (6) the magazine from the same weapon, and (7) fingernail clippings taken from Mr. Rankin. None of the conclusive results implicate Mr. Jones.

{¶16} With respect to the rope, the testing of a first swab identified a mixture of DNA from a major and minor contributor. The profile of the major contributor is consistent with Mr. Rankin. Mr. Jones can be excluded as minor contributor. With respect to a second swab of the rope, testing yielded a partial DNA profile that identified a mixture of three or more contributors, but was inconclusive with regard to Mr. Rankin and Mr. Jones. A third swab of the rope also generated a partial profile and identified a mixture of three or more contributors. The major profile identified in that test is consistent with Mr. Rankin. The test result was inconclusive with regard to Mr. Jones.

---

[1] Although not the basis for the trial court's decision to grant Mr. Jones a new trial, we note that ballistics testing completed after the original trial established that the gun found in Billy Simpson's car was the gun from which the shots that killed Mr. Rankin were fired. As discussed below, DNA obtained from blood found on the gun confirmed these results.

{¶17} With respect to the clasp knife, DNA testing identified a major and minor contributor. The profile of the major contributor is consistent with Mr. Rankin. Mr. Jones can be excluded as minor contributor. A second sample of the knife yielded inconclusive results because it contained insufficient DNA. No DNA was obtained from the handle of the knife.

{¶18} With respect to the shirt, two samples were tested. In the first, the profile of the major contributor is consistent with Mr. Rankin, and Mr. Jones can be excluded as minor contributor. Regarding the second, a mixture of DNA contributed by three or more individuals was identified. Mr. Rankin cannot be excluded as a contributor to the mixture, but Mr. Jones can be excluded.

{¶19} With respect to the fingernail clippings, the only result was consistent with Mr. Rankin's DNA.

{¶20} With respect to the murder weapon, DNA testing of the handle and barrel of the gun identified a mixture of DNA contributed by three or more individuals. Mr. Rankin cannot be excluded as a contributor, but Mr. Jones can be excluded. Regarding the magazine of the gun, both Mr. Rankin and Mr. Jones can be excluded as contributors to the mixture of DNA identified. Testing of the trigger yielded a partial DNA profile containing a mixture of two or more individuals, but the results were inconclusive.

{¶21} Reduced to the simplest possible terms, the DNA testing obtained in 2011 indicated that for every sample taken from the crime scene evidence that yielded a result other than "inconclusive," Mr. Jones can be excluded as the source of the DNA. At a minimum, as the trial court concluded, the DNA evidence is relevant to the reliability of Mr. Caton's testimony that Mr. Jones confessed to the murder. Similarly, the test results related to blood found on the gun found in Billy Simpson's car confirm subsequent ballistics tests that established it as the

murder weapon and bear on the reliability of Mr. Caton's testimony in that respect. Viewing the DNA testing results in the context of the evidence at trial, therefore, there is a substantial probability that were Mr. Jones tried again, a different outcome would result. The trial court did not abuse its discretion by granting Mr. Jones' motion for a new trial.

{¶22} The State's assignment of error is overruled.

## III.

{¶23} The State's assignment of error is overruled, and the order of the Summit County Court of Common Pleas that granted Mr. Jones' motion for a new trial is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

CARR, J.
HENSAL, J.
<u>CONCUR</u>

<u>APPEARANCES:</u>

MIKE DeWINE, Ohio Attorney General, and MICAH R. AULT, Assistant Attorney General, for Appellant.

CARRIE WOOD, Attorney at Law, and MARK GODSEY, Attorney at Law, for Appellee.